UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **JASON DOVER**, et al., | **20-CV-11643-TGB-DRG** |
| Plaintiffs, | |
| vs. | **ORDER DENYING DEFENDANTS' MOTION TO DISMISS** |
| **YANFENG US AUTOMOTIVE INTERIOR SYSTEMS I LLC**, et al., | |
| Defendants. | |

The Plaintiffs in this case seek to represent a class of persons who were participants or beneficiaries of Defendants'[1] employer-sponsored retirement plan ("the Plan"). Plaintiffs' First Amended Complaint ("FAC") claims that Defendants breached their fiduciary duties towards plan participants, and failed to adequately monitor other fiduciaries,

---

[1] The Defendants in this case are Yanfeng US Automotive Interior Systems I LLC, its Board of Directors, its Benefits Policy Committee, and various John Doe Defendants who are stand-ins for members of the Board of Directors or its various Committees and any other officers or employees with fiduciary responsibilities. FAC ¶¶ 24, 53. The Court will refer collectively to "Defendants" or "Yanfeng" unless it is necessary to specify a particular Defendant.

1

resulting in tangible losses to the retirement savings accounts of Plaintiffs—as well as to those of potential class members. Defendants argue that Plaintiffs cannot sufficiently plead fiduciary breach. For the reasons that follow, Defendants' Motion to Dismiss is **DENIED.**

## I.   BACKGROUND

This is a proposed class action on behalf of persons who were participants or beneficiaries of retirement plans offered by Defendants to employees from June 22, 2014 to present. The Named Plaintiffs alleged they participated in the Plan during their periods of employment with Defendant Yanfeng. All three Plaintiffs allege they suffered financial harm due to Defendants' actions as related to sixteen of the twenty-five investment options in the Plan. FAC ¶¶ 9, 16 (a full listing of all twenty-five investment options is at ¶ 73, ECF No. 24, PageID.759-60).

The "Plan" in question is defined in the FAC as being composed of twenty-five different funds (investment options) in which participants may invest. Its current form is the result of the change and/or merger of several Predecessor Plans. FAC ¶¶ 55-59. The current Plan, also known as the "Yanfeng Plan," represents a merger of the previously existing Yanfeng USA Plan and the Interior Savings and Investment Plan. *Id.*; *see also* n. 3, ECF No. 32, PageID.849.

Plaintiffs make a variety of allegations as to why Defendants' conduct with respect to each fund violates ERISA, and they make several distinct arguments regarding Defendants' mismanagement of the funds

2

overall. These allegations all contribute to two claims in the FAC: first, that the corporate and committee Defendants breached their fiduciary duties of loyalty and prudence, and second, that the corporate and board Defendants failed to adequately monitor other fiduciaries.

Defendants filed a Motion to Dismiss the FAC on December 14, 2020. ECF No. 32. The Court held a hearing on the motion on July 14, 2021. The Court notes that each of the parties have also filed extensive supplementary briefing (*see* ECF Nos. 50, 52, 53, 62, and 63 by Plaintiffs and ECF Nos. 54, 56, 59, 65, and 66 by Defendants) and the Court has considered the authorities submitted therein as well.

## II.   STANDARD OF REVIEW

Defendants' Motion is brought under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction generally comes in two varieties: a facial attack or a factual attack. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). A facial attack on the subject matter jurisdiction alleged in the complaint questions only the sufficiency of the pleading. *Id.* When reviewing a facial attack, the court takes the allegations in the complaint as true. *Id.* At all times, the plaintiff has the burden of proving jurisdiction to survive the motion. *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 915 (6th Cir. 1986). A factual attack, on the other hand, is not a challenge to the sufficiency of the allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, "no

presumptive truthfulness applies to the factual allegations" and "the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994); *see also* 2 James Wm. Moore, Moore's Federal Practice § 12.30[4] (3d ed. 2000) ("[W]hen a court reviews a complaint under a factual attack, the allegations have no presumptive truthfulness, and the court that must weigh the evidence has discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts.").

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a lawsuit or claim where the defendant establishes the plaintiff's "failure to state a claim upon which relief can be granted." *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Consideration of a Rule 12(b)(6) motion is confined to the pleadings. *Id.* In evaluating the motion, courts "must construe the complaint in the light most favorable to the plaintiff, accept all well-pled factual allegations as true and determine whether the plaintiff undoubtedly can prove no set of facts consistent with their allegations that would entitle them to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)).

Though this standard is liberal, it requires a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action" in support of her grounds for entitlement to relief. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under *Ashcroft v. Iqbal*, the plaintiff must also plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. 662, 678 (2009) (citation omitted). A plaintiff falls short if she pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678-79).

## III.   ANALYSIS

### A. Standing

Defendants make a factual attack under Fed. R. Civ. P. 12(b)(1) that the named Plaintiffs do not have constitutional standing to challenge Defendants' selection and/or management of some of the funds that comprise the Plan. There are eleven challenged funds in the Plan that none of the Named Plaintiffs personally participated in. *See* "Challenged Fund" Table, ECF No. 32, PageID.852-53. Therefore, Defendants say they have suffered no "injury in fact" with relation to these funds, as is required for standing. *Cleveland Branch NAACP v. City of Parma*, 263 F.3d 513, 523-24 (6th Cir. 2001) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000)).

Specifically, Defendants argue that a key fact is the Plan's "defined contribution" structure: participants' money is only invested in the funds they choose. This is in contrast to plans with a "defined benefit" structure, where all monies contributed to the plan are pooled and invested on behalf of the participants. Because Plaintiffs' benefit payments are not affected by the performance of the funds in which they are not invested, Defendants argue that they suffer no injury-in-fact related to them and therefore cannot show standing.

Plaintiffs argue that this does not matter because they are alleging wrongdoing through "general practices" taken by the Plan fiduciaries across their management of all the plans. Additionally, they argue that because this is a derivative lawsuit they have standing as to all the challenged funds even if the named Plaintiffs did not personally participate in them. ECF No. 42, PageID.1504-07. These allegations include the decision to include mostly actively managed funds over passive ones (FAC ¶ 113) and the failure to review individual funds and make sure the Plan was getting the lowest-cost share class options (FAC ¶¶ 143, 145, 147, 166).

There is support in the caselaw for Plaintiffs' position: as long as the Complaint contains broad allegations that the fiduciaries violated ERISA, claims regarding specific funds are allowed to move forward at the motion to dismiss stage even if not all of the named plaintiffs participated in every one of the individual funds. *See, e.g., Davis v.*

6

*Magna Int'l of Am., Inc.*, No. 20-11060, 2021 WL 1212579, at \*4-5 (E.D. Mich. Mar. 31, 2021) (Edmunds, J.) ("The Plaintiffs have satisfied the requirements of Article III because they allege actual injury to their own plan accounts and they allege injury in fact that is causally related to the conduct they challenge on behalf of the Plan."); s*ee also Kurtz v. Vail Corp.*, No. 1:20-CV-00500-RBJ, 2021 WL 50878, at \*4-5 (D. Colo. Jan. 6, 2021) (collecting cases). *Patterson* and the other cases cited by Defendants represent the minority position.[2]

The Sixth Circuit has said little directly relevant to this issue: the parties cite cases developed in the Second and Third Circuits. But the Sixth Circuit's reasoning in *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422 (6th Cir. 1998) is instructive as to how that Court might decide this issue. *Fallick* concerns an ERISA suit where the defendant sought dismissal on the grounds that the named plaintiff was on a different insurance plan from that of some potential class members. The defendant said that any claims related to the other insurance plans should be dismissed. The Court disagreed, distinguishing between (1) a named

---

[2] *Patterson v. Morgan Stanley*, No. 16-CV-6568 (RJS), 2019 WL 4934834, at \*5 (S.D.N.Y. Oct. 7, 2019); *see also Wilcox v. Georgetown Univ.*, No. CV 18-422 (RMC), 2019 WL 132281, at \*1 (D.D.C. Jan. 8, 2019); *Marshall v. Northrop Grumman Corp.*, No. CV 16-06794 AB, 2017 WL 2930839, at \*8 (C.D. Cal. Jan. 30, 2017); *In re UBS Erisa Litig.*, No. 08-CV-6696 RJS, 2014 WL 4812387, at \*6 (S.D.N.Y. Sept. 29, 2014), *aff'd sub nom. Taveras v. UBS AG*, 612 F. App'x 27 (2d Cir. 2015); *Brown-Davis v. Walgreen Co.*, No. 1:19-CV-05392, 2020 WL 8921399, at \*3 (N.D. Ill. Mar. 16, 2020).

plaintiff's own Article III standing and (2) his relationship to other class members. The former must exist in order for the case to move forward, but the latter has to do with the class action requirements of Rule 23. The Court held that Plaintiff Fallick did not have to be a member of every plan to establish standing for his own injury under his plan and also maintain the putative class claims on behalf of other plaintiffs who were members of the other insurance plans. The plaintiff's complaint was about "the methodology used to determine benefits," which he alleged was common to all potential class members, regardless of the plan in which they were enrolled.

Although the facts here are about retirement benefits rather than insurance, the claims arise under the same sections of the ERISA statute, so it is reasonable to expect that the Sixth Circuit would approach the issue similarly. As discussed in *Fallick*, some courts have explicitly indicated that the standing challenge raised by Defendants has merit, but is more properly addressed at the class certification stage, because it pertains to whether the named plaintiffs may serve as appropriate class representatives. *See, e.g.*, *Kurtz*, 2021 WL 50878 at *4; *Cassell v. Vanderbilt Univ.*, No. 3:16-CV-2086, 2018 WL 5264640, at *3 (M.D. Tenn. Oct. 23, 2018) (referencing *Fallick* logic). Accordingly, while this issue may be thoroughly scrutinized in connection with any class certification motion (at which point Plaintiffs may be in a position to present more concrete information about Defendants' alleged wrongful practices and to

what extent they impact all of the funds at issue), at this point Plaintiffs have standing to move forward. The Motion to Dismiss will not be granted on this ground.[3]

## B. Sufficiency of breach of fiduciary duty allegations

To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege that: (1) the defendant was a fiduciary of an ERISA plan who, (2) acting within his capacity as a fiduciary, (3) engaged in conduct constituting a breach of his fiduciary duty. 29 U.S.C. § 1109.

The fiduciary duty under ERISA includes a duty of prudence as well as a duty of loyalty. *Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1061-62 (M.D. Tenn. 2018). Breaches of either duty will amount to a breach of fiduciary duty. Plaintiffs make arguments that Defendants have violated ERISA under both theories, and the Court will address each in turn. But first the Court will discuss Defendants' argument relating to the time period in which they have served as fiduciaries.

---

[3] The Court also notes that the United States Solicitor General has taken this same position in an amicus brief filed in a case before the Supreme Court, currently on appeal from the Seventh Circuit. *See* Brief for the United States as Amicus Curiae, *April Hughes et al. v. Northwestern University et al.*, 19-1401; https://perma.cc/P55F-U3MG. While not controlling or precedential authority, the Solicitor General's position should be accorded some weight in support of the Court's decision here because it conveys the government's interpretation of a federal statute.

### i.      Preliminary issue: time period of liability

As noted, a threshold requirement to bring any claims for breach of fiduciary duty is that the named defendant was a fiduciary and was acting in a fiduciary capacity at the time of the alleged breach. *Van Loo v. Cajun Operating Co.*, 64 F. Supp. 3d 1007, 1017 (E.D. Mich. 2014) (citing *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)). Defendants argue that because the Plan *in its current form* was not constituted until January 1, 2018, they were not fiduciaries of the Plan until this date, and consequently Plaintiffs cannot point to any decisions made prior to that date as bases for alleging that Defendants breached their fiduciary duties. The predecessor plans "had different investment options with different fees and returns and different fiduciaries." ECF No. 32, PageID.855.

Plaintiffs respond that Yanfeng became a Sponsor of the Interior Savings plan in 2017, arguing therefore that the Yanfeng Defendants became fiduciaries at that time. ECF No. 42, PageID.1507. But this allegation contradicts Plaintiffs' FAC, which alleges that Yanfeng has only been a sponsor and fiduciary since January 1, 2018. ¶ 28. Plaintiffs do not respond to Defendants' argument that the Plan as it exists today is fundamentally different from the predecessor plans. There is no information in the FAC as to why June 22, 2014 should be considered the appropriate starting date for the period of liability. Additionally, at oral argument counsel for Plaintiffs conceded that "harm to our class would

10

have commenced on January 1 of 2018." Tr. 7/14/21 at 27:22-25, ECF No. 64, PageID.2291.

Consequently, any factual allegations pertaining to conduct by Defendants, or regarding the Plan before January 1, 2018, will not be considered by the Court in determining whether the Complaint states a plausible claim for breach of fiduciary duty. Defendants would be liable only for actions taken after they became fiduciaries on January 1, 2018.[4]

### ii.   Duty of prudence

Plaintiffs first allege that Defendants violated ERISA's duty of prudence, which states that fiduciaries must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims," by diversifying investments so as to minimize risk, and in accordance with the plan's governing documents. 29 U.S.C. § 1104(a)(1).

The test for determining whether the duty of prudence has been violated or not focuses on the *process* used by the fiduciaries (rather than the results they obtained): "whether the individual trustees, at the time

---

[4] That does not necessarily mean that Plaintiffs would be unable to seek discovery from Defendants concerning pre-2018 conduct. If Defendants took actions or made decisions prior to January 2018 that were carried out after that date (meaning they were implemented during the time when Defendants were fiduciaries), information concerning such actions or decisions would clearly be discoverable.

11

they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment." *Pfeil v. State St. Bank & Tr. Co.*, 806 F.3d 377, 384 (6th Cir. 2015). At the same time, courts recognize that, at the motion to dismiss stage, plaintiffs may not know very much about defendants' decision-making processes because they have not conducted discovery, and instead must rely on circumstantial allegations that would allow the Court "to reasonably infer . . . that the process was flawed." *Kurtz*, 2021 WL 50878 at *8; *see also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009) (emphasizing the importance of following the Fed. R. Civ. P. 12(b)(6) standard and outlining application in the ERISA context).

The key question, therefore, is whether Plaintiffs' allegations taken as a whole are sufficient to make out a claim of breach of the duty of prudence. Plaintiffs make allegations under several theories, and while the Court will consider each individually, the ultimate determination as to whether a breach is adequately pled does not rise or fall with any one argument. *See, e.g., Sweda v. Univ. of Pennsylvania*, 923 F.3d 320, 331 (3d Cir. 2019) ("[T]he complaint should not be 'parsed piece by piece to determine whether each allegation, in isolation, is plausible.'"); *Griffin v. Flagstar Bancorp, Inc.*, 492 F. App'x 598, 603 (6th Cir. 2012) ("To survive a motion to dismiss . . . [Plaintiffs] must plead factual content that would

allow the court reasonably to infer that . . . the defendants did not act as a prudent person would have acted in a similar situation.").[5]

### 1. Failure to select lower-cost share classes

Investors can select from various "classes" of shares in any given investment fund depending on how much money they are putting into the fund. This is analogous to bulk buying—a large company or retirement plan ("institutional class") investor that will put more money into the fund will be offered a lower cost rate to buy into the fund than, for example, an individual ("retail class") investor. The "cost" of a given class of shares is measured using the "net expense ratio": a higher net expense ratio means a higher percentage of returns on that investment must be paid back in fees. An investor buying large quantities of shares in a given fund, therefore, would theoretically be eligible for a share class with a lower net expense ratio, and by extension a lower fee to its participants.

Plaintiffs provide a chart of sixteen funds in the Plan where, in 2020, the Plan share class had a higher net expense ratio than another available share class in the same fund. ECF No. 24, PageID.786-87. They allege that Defendants breached their duty of prudence by not moving

---

[5] This is not, as Defendants repeatedly insist, a looser standard than that required by *Twombly* and *Iqbal*. *See, e.g.*, ECF No. 56, PageID.2076. Pleadings must still offer more than conclusory statements for their arguments to be considered. But there is no authority from the Sixth Circuit indicating that each separate theory advanced by Plaintiffs to support a breach of fiduciary duty must be independently sufficient in order for the overall claim of breach to stand.

the Plan investments into the less expensive share classes, which would have decreased the amount of fees Plan participants had to pay to those funds. Defendants argue that selection of a higher share class does not require an inference that the fiduciary process is flawed, and that Plaintiffs are incorrect to say that they received no services or benefits from the selection of the higher-cost shares. They also argue that Plaintiffs have not alleged the Plan would have been eligible for the lower cost shares. ECF No. 32, PageID.856-59.

At the motion to dismiss stage, "[c]ourts examining this issue have concluded that investment in a retail class fund where an identical institutional class fund with lower fees is available can violate the duty of prudence." *Davis v. Magna Int'l of Am., Inc.*, 2021 WL 1212579 at *8 (*quoting Disselkamp v. Norton Healthcare, Inc.*, 2019 WL 3536038, at *4 (W.D. Ky. Aug. 2, 2019)). Plaintiffs have provided factual evidence that there were lower cost options available in the same funds, and allege that the Plan would qualify for the low cost share classes and there are no demonstrated benefits flowing to them that justify Defendants choosing the higher cost options. FAC ¶¶ 114-18, 143-44, 146. At this stage these allegations must be accepted as true. The cases cited by Defendants that find this type of allegation to be insufficient rely heavily on opinions specific to those districts or circuits. *See, e.g., Ferguson v. Ruane Cunniff & Goldfarb Inc.*, No. 17-CV-6685 (ALC), 2019 WL 4466714, at *5 (S.D.N.Y. Sept. 18, 2019) (relying on another S.D.N.Y. case); *Martin v.*

14

*CareerBuilder, LLC*, No. 19-CV-6463, 2020 WL 3578022, at *4 (N.D. Ill. July 1, 2020) (relying on "binding Seventh Circuit precedent" in *Divane v. Northwestern University*, 953 F.3d 980 (7th Cir. 2020)); *Davis v. Salesforce.com, Inc.*, No. 20-CV-01753-MMC, 2020 WL 5893405, at *5 (N.D. Cal. Oct. 5, 2020). Relying on cases from courts in the Sixth Circuit, however, such as *Davis* and *Disselkamp*, cited above, the Court finds this allegation is sufficient to support a breach of prudence claim.

### 2. Failure to select lower-cost alternative funds

Most of the investment funds in the Plan are comprised of multiple stocks, rather than a single investment. Actively managed funds have fund managers who change the collection of stocks in the fund more frequently based on data and other market insights in an attempt to "beat the market." Because of this hands-on approach, they charge higher fees. Passively managed funds, by contrast, generally have lower fees because they follow more of a "set and forget" auto-pilot model—passively managed funds are created to mirror existing stock market indices, and so the fund manager does not engage in the same intensive work of picking, choosing, and changing stocks.

Plaintiffs argue that the Plan includes too many actively managed funds, and that there exist on the market comparable alternative passively managed funds at much lower cost. ¶ 152, ECF No. 24, PageID.789-92. Therefore, they say Defendants breached their duty of prudence by not opting for more of the comparable funds with lower fees.

At oral argument, Plaintiffs clarified that the allegation is not that actively managed funds are per se imprudent, but rather that the Plan did not receive sufficient benefits to justify the inclusion of so many costlier funds. ECF No. 42, PageID.1513; *see also* Tr. 7/14/21 at 35:4-14, ECF No. 64, PageID.2300. Defendants cite an often-quoted Seventh Circuit case on this topic, which notes that "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund." *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009). They argue generally that the idea that index funds are more prudent than actively managed funds is debated, that the Plan has a mix of actively and passively managed funds, and that the existence of comparable funds cannot lead to an inference of imprudence. ECF No. 32, PageID.860-62.

The strength of this allegation hinges on the extent to which the Plan's offerings are dominated by actively managed funds, and to what extent Plaintiffs allege that this seeming preference for actively managed funds has to do with the Defendants' *process* in choosing funds. According to the FAC, seventeen actively managed funds—68% of the fund offerings—are identified by Plaintiffs as being significantly more expensive than comparable funds. FAC ¶ 112, 151. Additionally, twenty-one of the twenty-five funds in the Plan are actively managed. *Id.* Both of these allegations allow a reasonable inference in favor of Plaintiffs that Defendants have a selection process that favors higher-fee funds. ¶¶ 112. These allegations are sufficiently plausible to support the breach claim.

16

### 3. Underperformance of funds in the Plan

Plaintiffs also compare funds in the Plan to several benchmark indices and provide one, three, and five-year timescales to show that the Plan funds were often outperformed. They also list comparator funds that performed better in the same timescales. ECF No. 24, PageID.795-805. Plaintiffs say this underperformance by the funds in the Plan is evidence of a breach of the duty of prudence: if the process for review of funds had involved more due diligence, Defendants would have noticed that these funds were underperforming and replaced them with other options, such as the comparator funds cited. Defendants argue that the timescale of the Fund—less than three years at the filing of the FAC—is too short to demonstrate the kind of long-term underperformance that would lead to an inference of an imprudent process.

The fact that this fund has only been in place under these fiduciaries since 2018 significantly weakens Plaintiffs' allegations on this score. Target retirement accounts in particular are meant to be long-term investments: they are structured to be low-risk and high-reward over time. The idea that the choice to not jump ship from these investments after just a few years necessarily implies that Defendants' fiduciary processes are flawed is a strained inference at best. *See, e.g.*, *Davis v. Salesforce.com, Inc.*, 2020 WL 5893405 at *4 (finding allegations related to underperformance to be insufficient when fund had only been in place for five years).

17

However, Plaintiffs allege that as soon as Defendants took on their fiduciary duties, they should have reviewed the performance history of these funds before selecting them; according to Plaintiffs, a reasonably prudent person would not have chosen these funds in light of other options available. FAC ¶¶ 159-66. When there are two plausible versions of the events at the motion to dismiss stage, the Court must credit Plaintiffs'.

Defendants additionally argue that some of the benchmarks used by Plaintiff are inappropriate comparators and/or name funds for which the Plan would not have qualified. ECF No. 32, PageID.862.-64. While it would have been preferrable for Plaintiffs to provide more detailed information as to why the specific Morningstar indexes listed are, in fact, accurate comparators, parties in similar ERISA actions routinely reference these indexes, or expert testimony that cites these indexes, to allege a breach of duty. *See, e.g., Brotherston v. Putnam Invs., LLC*, 907 F.3d 17, 32 (1st Cir. 2018) (expert testimony regarding comparators from a Morningstar index); *Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685, 697 (W.D. Mo. 2019) (same); *White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2016 WL 4502808, at *16 (N.D. Cal. Aug. 29, 2016) (use of Morningstar category rankings to argue that a particular fund "lagged its benchmark"); *Krueger v. Ameriprise Fin., Inc.*, No. 11-CV-02781 SRN/JSM, 2012 WL 5873825, at *3 (D. Minn. Nov. 20, 2012) (same). Plaintiffs reference these indexes in much the same way. FAC ¶ 100.

Overall, though the allegations regarding underperformance of funds are thin, at the motion to dismiss stage they are sufficient to support a plausible claim of breach of duty of prudence.

### 4. Excessive recordkeeping fees

"Recordkeeping" is the term for administrative services provided to a plan by its "recordkeeper." FAC ¶ 171. Per Plaintiffs' allegations, the compensation for Fidelity, the Plan's recordkeeper, doubled between 2018 and 2019. To allow such an increase, Plaintiffs say, implies a breach of the duty of prudence. FAC ¶ 181. Plaintiffs argue that prudent fiduciaries must monitor the recordkeeping fees being paid by asking for documentation, keeping track of all fees (including those that are direct payments and those that are revenue-sharing) that eventually go to a recordkeeper, and investigating overall trends in the marketplace to ensure that the fees they are paying are fair. FAC ¶¶ 177-79. They allege that Defendants have failed to undertake any of these practices because there is no evidence that recordkeeping costs were ever negotiated down. In response, Defendants primarily argue that Plaintiffs' figures for recordkeeping costs and per person costs in FAC ¶ 181 are incorrectly calculated, and that if correct figures were used, the per person recordkeeping costs would in fact fall in a reasonable range. ECF No. 32, PageID.864-867.

Based on the Court's examination of the record, Defendants are correct. The Plan's recordkeeping fees expended are listed in a specific

location on the IRS Form 5500, which the Plan is required to file each year: Box 6(g). But the numbers Plaintiffs used to calculate the alleged per-person cost for fees (listed in the "Disclosed Recordkeeping Direct Costs" column of the Table found at FAC ¶ 181) come from Box 2i(5) on the Form, which includes costs for professional fees, investment advisory and management fees, and "other."[6]

Plaintiffs in response attempt to analogize this situation to *Davis v. Magna Int'l of Am., Inc.*, where Judge Edmunds found that "at this stage Plaintiffs need not allege why the fees were not justified by the services provided when considering the plan as a whole." 2021 WL 1212579 at *20. But here, Plaintiffs do not in fact accurately allege that the recordkeeping fees exceeded the amounts they say would be reasonable. Factually inaccurate allegations are not plausible allegations, and, for the purposes of evaluating Plaintiffs' allegations at this stage, the Court does not find that Plaintiffs have demonstrated a breach of the duty of prudence through improperly high recordkeeping fees.[7]

---

[6] Plaintiffs essentially concede that the figures in the FAC regarding the per person cost of recordkeeping fees in this plan are incorrectly calculated. Tr. 7/27/21 at 38:4-9, ECF No. 64, PageID.2303.

[7] At oral argument, counsel for Plaintiffs offered additional information regarding the fees that recordkeeper Fidelity allegedly receives from the Plan, but this information was not included in the FAC and therefore will not be considered by the Court.

### iii.  Duty of loyalty

The second prong of the fiduciary duty, the duty of loyalty, requires that "all decisions regarding an ERISA plan 'must be made with an eye single to the interests of the participants and beneficiaries.'" *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 448 (6th Cir. 2002) (quoting *Berlin v. Mich. Bell Tel. Co.*, 858 F.2d 1154, 1162 (6th Cir.1988)). This means, among other things, avoiding improper transactions (listed in 29 U.S.C. § 1106) with "parties in interest" (listed in 29 U.S.C. § 1002(14)) or self-dealing. Therefore, there can be overlap between activities that violate a duty of prudence and those that violate a duty of loyalty, but to fall in the latter category "Plaintiffs must sufficiently allege that Defendants acted *for the purpose of benefitting* those third parties or themselves*." Cassell*, 285 F. Supp. 3d at 1062 (emphasis added).

Plaintiffs make two arguments as to why Defendants have breached their duty of loyalty.

### 1. Conflicted advisors

In 2018 and in 2019, the Plan's Form 5500 disclosures show that several consultants and investment advisors were paid by the Plan. Plaintiffs take issue with the hiring of Strategic Advisors, Inc. ("SAI") and Stifel in both years. They allege that both SAI and Stifel are dual-registered investment advisors, meaning that they are paid both by the Plan and by some of the various funds they might recommend (through commission). FAC ¶ 133. Therefore, if certain funds are included in the

Plan, SAI and Stifel might receive commissions from them, in addition to whatever payment they already receive from Defendants. Plaintiffs indicate that this is a breach of the duty of loyalty. Defendants respond that the allegations in the FAC do not go so far as to indicate that a conflict of interest or self-dealing occurred when SAI and Stifel's services were engaged. ECF No. 32, PageID.869-70. They argue that Plaintiffs are merely attempting to re-cast "duty of prudence" allegations in the frame of loyalty.

"[A]n act which has the effect of furthering the interests of a third party is fundamentally different from an act taken with that as a goal. The former may well not be a violation of the duty of loyalty, but the latter may well be." *Sacerdote v. New York Univ.*, No. 16-CV-6284 (KBF), 2017 WL 3701482, at *6 (S.D.N.Y. Aug. 25, 2017). Plaintiffs' allegations regarding the activities of these investment advisors do not address the *intent* behind Stifel or SAI's actions. FAC ¶¶ 131-139. For example, there is no allegation that Stifel and SAI always or often recommended only those funds that would benefit them, or that in some other way their conduct was indicative of a breach. Looking only at the post-2018 actions of the Plan, Plaintiffs do not sufficiently allege a breach of the duty of loyalty merely through the hiring of these investment advisors.

### 2. Failure to disclose dollar amounts of revenue sharing payments made to Fidelity

Plaintiffs also add the allegation that the Defendants' failure to specifically disclose the amounts of revenue-sharing payments made to Fidelity on the Form 5500 is a breach of the duty of loyalty. FAC ¶ 184. Defendants respond that this allegation, too, does not accuse them of engaging in any kind of wrongful behavior for the purposes of self-dealing, or in behavior that is a violation of the duty to always act with the best interests of plan participants in mind. ECF No. 32, PageID.869.

Without more specific allegations as to why Defendants should have been reporting the revenue sharing payments made to Fidelity in greater detail (rather than simply the formula used to calculate them, which they do report), it is not reasonable for the Court to infer that this action necessarily represents a breach of the duty of loyalty.

### iv.   Conclusion

Plaintiffs frame their allegations regarding breach of the duties of prudence and loyalty under one count for breach of fiduciary duty. Therefore, even though Plaintiffs fail to state a valid claim for breach of loyalty,[8] their allegations regarding a breach of the duty of prudence are sufficient such that the claim for breach of fiduciary duty survives

---

[8] At oral argument, counsel for Plaintiffs conceded that this case is "not really" a breach of duty of loyalty case, but rather is "much more a breach of the duty of prudence." Tr. 7/14/21 at 30:16-19, ECF No. 64, PageID.2300.

dismissal. Those alleged breaches of the duty of prudence include allegations against Defendants for failure to enroll in lower-cost share classes, failure to select lower-cost alternative funds, and failure to get rid of underperforming funds. The Motion to Dismiss as to Count I is therefore denied.

## C. Failure to monitor

Count II of the FAC alleges that certain Defendants did not appropriately monitor the Committee Defendants who were responsible for making investment choices, hiring outside advisors, and generally engaging in all the conduct that is the subject of the breach of fiduciary duty allegations.

Because a claim that certain Defendants failed to monitor the imprudent or disloyal actions of others requires a preliminary finding of breach of those duties, courts generally treat a "failure to monitor" claim as rising or falling with a breach of duty claim. *See, e.g., Davis v. Salesforce.com, Inc.*, 2020 WL 5893405 at *7 ("Plaintiffs' Second Claim for Relief is . . . derivative of the First Claim for Relief"); *Karpik v. Huntington Bancshares Inc.*, No. 2:17-CV-1153, 2019 WL 7482134, at *9 (S.D. Ohio Sept. 26, 2019) ("Having already found that Plaintiffs stated a claim for breach of fiduciary duty, the Court finds that these references to those breaches are sufficient to state a claim for failure to monitor."). The Court has found that Plaintiffs' allegations of breach of fiduciary

24

duty (prudence) are sufficient, and therefore the claim for failure to monitor can also stand. The Motion to Dismiss as to Count II is denied.

Defendants also argue that, even if we find the breach of duty to be sufficient, this claim should fail because Plaintiffs do not make sufficient allegations regarding the monitoring processes. ECF No. 47, PageID.1601. But at the Motion to Dismiss stage, again, Plaintiffs can only be expected to know so much about Defendants' internal monitoring structures. The allegations they have made (FAC ¶ 201) are sufficient to make out this claim at this stage.

## CONCLUSION

For the reasons stated, Defendants' Motion to Dismiss (ECF No. 32) is **DENIED.**


**SO ORDERED**, this 28th day of September, 2021.


BY THE COURT:



/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge

25