UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **JASON DOVER, *et al.*,**<br><br>Plaintiffs,<br><br>vs.<br><br>**YANFENG US AUTOMOTIVE INTERIOR SYSTEMS I LLC, *et al.*,**<br><br>Defendants. | 2:20-CV-11643-TGB-DRG<br><br>FINAL APPROVAL OF CLASS SETTLEMENT (ECF NO. 86) AND ORDER REGARDING PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, EXPENSES, AND INCENTIVE AWARDS (ECF NO. 84) |

Before the Court is Plaintiffs' Unopposed Motion for Final Approval of a Class Action Settlement Agreement (ECF No. 86). Plaintiffs also seek attorney's fees, reimbursement of expenses, and approval of incentive awards for the three named plaintiffs in this case, Jason Dover, Eric Simpson, and Steven C. Leggett (ECF No. 84). The Court held a fairness hearing on these motions on February 22, 2023 to determine whether the settlement agreement should be given final approval.

Having considered the briefs, exhibits, and oral arguments presented in favor of final approval, the Court is satisfied that the settlement is fair, adequate, and reasonable; the attorney's fee, expense reimbursement, and incentive awards (as modified) are reasonable; and the settlement is in the best interest of the class as a whole. The motion for final approval of the class settlement will therefore be **GRANTED**.

1

## I. Procedural Background

The facts giving rise to this lawsuit are set forth in the Court's September 28, 2021 Order Denying Defendants' Motion to Dismiss the Complaint (ECF No. 67). Briefly, Plaintiffs sued several Defendants associated with a Yanfeng-sponsored retirement plan, asserting that Defendants: (1) breached their duties of loyalty and prudence in managing the plan; and (2) failed to adequately monitor other fiduciaries associated with the plan. According to the complaint, several of the plan's investment options had been mismanaged since 2014. The specific breaches of duties Plaintiffs complained of included selection and retention of imprudent investment options; failure to investigate more prudent investment options; failure to prevent excessive record-keeping fees; failure to ensure that other fiduciaries managing the funds were qualified; failure to ensure the other fiduciaries had adequate resources; and failure to maintain adequate records.

At the motion to dismiss stage, the Court allowed Plaintiffs to proceed with their Complaint—though not on their theory that Defendants had breached a duty of prudence by failing to prevent excessive record-keeping fees or on their theory that Defendants breached any duties of loyalty. Additionally, based on concessions by Plaintiffs' counsel at oral argument, the Court limited the liability period to on or after January 1, 2018. (ECF No. 67.)

Following a mediation and other negotiations in early 2022, the parties achieved a settlement resolving their claims and defenses and submitted the terms of that settlement to the Court for preliminary approval. On October 13, 2022, the Court entered an order preliminary approving the agreement and certifying the following class for settlement purposes under Federal Rule of Civil Procedure 23(b)(1):

> All participants and beneficiaries of the Yanfeng Automotive Interior Systems and Investment 401(k) Plan from January 1, 2018 through October 13, 2022.

The Court also approved Angeion Group as the Settlement Administrator responsible for carrying out the duties set forth in the Settlement Agreement, as well as a proposed settlement notice to class members and a plan for mailing that notice to the class members. (Am. Order, ECF No. 81.)

## II. The Proposed Settlement

Under the proposed settlement, Defendants agree to pay $990,000 to a common fund for payment of claims, attorney's fees, and expenses. The agreement contemplates the following payment allocations: *first,* attorney's fees in the amount of $330,000, or 33.33%, and expenses not to exceed $50,000, as approved by the Court; *second*, incentive awards of up to $10,000 for each of the three named plaintiffs; *third*, payment to each class member under the proposed allocation plan. (ECF No. 77-1.) Defendants have also agreed to certain forms of non-monetary relief,

including that members of the Plan's Investment Committee will: follow the guidelines in the Investment Committee Policy regarding the frequency of meetings; review reports from the investment advisor regarding performance of the investment funds offered under the Plan on a quarterly basis; and participate in training programs on fiduciary responsibilities.

Under the proposed allocation plan, the Settlement Administrator will calculate the sum of a class member's quarterly balances at the end of each full quarter in the Class Period, beginning with the balance on March 31, 2018 and ending with the balance on September 30, 2022. The Administrator will then sum all the balances and allocate to each class member a share of the net settlement in proportion to the sum of that class member's balance as compared to the sum of the balance for all class members. If the pro-rated share is less than $10.00, it will be removed from the calculation and not paid. (Plan of Allocation, ECF No. 87-3.) The Settlement Agreement contemplates that any portion of the Settlement remaining after distributions to class members, including costs and taxes and class member payments which remain uncashed after 180 days after distribution, shall be paid back into the Plan for the purpose of defraying administrative fees and expenses of the Plan.

Plaintiffs, for their part, agree to release Defendants from "any and all claims of any nature whatsoever concerning the Plan, and any and all claims concerning the administration of the Plan, and any and all claims

concerning the performance of fiduciary responsibilities for the Plan." But class members will not be deemed to have released any claim regarding "individual eligibility for benefits under the Plan, or to contest the correct amount of such benefit, except to the extent that such claim may relate to or arise from the Releasees' administration of the Plan."

### III. Class Notice

A Project Manager from Angeion Group attested that, by November 27, 2022, Angeion Group sent notice of the settlement to 10,501 class members via first class mail. (Flynn Decl., ECF No. 87-2.) The notice contains a brief description of the claims advanced in the lawsuit, a summary of the terms of the settlement agreement, a description of the plan of allocation, information about the final approval hearing, and information about how to file objections to the settlement. (ECF No. 87-2, PageID.3205-31.) Additionally, by November 23, 2022, Angeion Group established a toll-free phone number to provide class members with additional information regarding the settlement, as well as website, http://www.YanfengErisaSettlement.com.

Under the schedule set by the Court, the period for filing objections ran until January 25, 2023. To date, Angeion Group has not received any objections to the proposed settlement. (Flynn Decl., ECF No. 87-2.)

### IV. Approval of Class Settlement

Federal Rule of Civil Procedure 23(e) imposes certain "rules for the settlement, dismissal, or compromise of class claims"—including that

5

class-action claims "may be settled, voluntarily dismissed, or comprised only with the court's approval." *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1093 (6th Cir. 2016) (internal citations omitted). Approval is only warranted if the Court determines that the proposed settlement is "fair, reasonable, and adequate." *Id.* Factors that guide the Court in its assessment are: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Id.* (quoting *Int'l Union, UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).

The Court finds that Plaintiffs have established that the proposed settlement agreement is fair, adequate, and reasonable.

*First*, the risk of fraud and collusion is low. Plaintiffs have litigated the merits of the claims since 2020, including through a vigorously contested motion to dismiss. The parties also engaged in arm's length negotiations at a mediation presided over by an experienced professional mediator. Although the mediation was not initially successful, the parties continued to engage in negotiations and ultimately reached an agreement resolving all the claims in mid-February 2022. And courts in this district presume the absence of fraud or collusion unless there is evidence to the contrary. *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. Nov. 1, 2006).

6

*Second*, the litigation is complex. The duration and expense have not been insignificant and would only grow if this case proceeded to trial. As Plaintiffs point out in their motion, litigating an ERISA case of this type on the merits is a substantial undertaking, with significant risks, expenses, and delay. (ECF No. 86, PageID.2943.) Courts have recognized that "ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation." *Krueger v. Ameriprise*, No. 11-cv-02781, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015); *see also Abbott v. Lockheed Martin Corp.*, No. 06-cv-701, 2015 WL 4398475, at *2 (S.D. Ill. July 17, 2015) (noting that ERISA 401(k) cases are "particularly complex"). Defendants have forcefully defended their actions with respect to the plan to date, and there is no reason to believe they would not continue to do so through trial and on appeal if necessary.

*Third*, while the parties have not conducted extensive formal discovery in this case, Plaintiffs' counsel undertook considerable efforts to investigate the claims prior to filing the initial complaint in this case. The absence of formal discovery is not an obstacle to approving a settlement, so long as the parties have adequate information to evaluate their positions. *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *4 (E.D. Mich. Dec. 12, 2013) (Borman, J.). And here counsel's preliminary investigation included reviewing Yanfeng's annual reports, auditors' reports, and participants' account statements, as well as interviewing plan participants. Counsel also reviewed thousands of

pages of non-public materials regarding the plan provided by the Defendants, including meeting agendas, meeting minutes, fiduciary reviews, fund analysis supplements, participant fee disclosures, and other disclosures. (Lechtzin Decl., ECF No. 87, ¶¶2-3.)

*Fourth*, Plaintiffs' prospects for success on the merits are uncertain. The key questions in this case turn on an assessment by a factfinder of whether defendants and other plan fiduciaries breached their duties of prudence regarding certain investment fund options. As evidenced by recent Sixth Circuit decisions, such as *Smith v. CommonSpirit Health*, 37 F.4th 1160 (6th Cir. 2022), and *Forman v. TriHealth, Inc.*, 40 F.4th 443 (6th Cir. 2022), the law regarding fiduciary duties under ERISA is nuanced and rapidly developing. The certainty provided by the monetary settlement in this case outweighs the risks of Plaintiffs potentially receiving nothing if the matter were to proceed to trial.

*Fifth*, class counsel and the named plaintiffs, who participated during investigation and mediation, express endorsement of the settlement. (Lechtzin Decl., ECF No. 87, ¶ 12.)

*Sixth*, none of the absent class members who received notice have filed objections to the settlement. To the contrary, class counsel has attested that he has personally spoken with dozens of class members about the proposed settlement, and the majority of those members expressed approval of the settlement. (Lechtzin Decl., ECF No. 87, ¶ 8.)

8

*Seventh*, the public interest favors resolution of this matter by way of settlement that will secure recovery for class members while avoiding the considerable time, expense, and uncertainty of further litigation.

Additionally, the parties retained an independent fiduciary, who evaluated the terms of the agreement and prepared a report, concluding that the terms of the agreement are reasonable, adequate, and in the best interests of the class members. (Independent Fiduciary R., ECF No. 88.) The independent fiduciary is experienced in the field of ERISA litigation and has reviewed over 100 previous settlements involving ERISA plans. And before reaching its conclusion, the independent fiduciary reviewed key documents from the litigation, the settlement agreement, and the proposed plan of allocation and also interviewed counsel for both parties.

## V. Class Certification

Any class certification must satisfy Rule 23(a)'s requirement of numerosity, commonality, typicality, and adequate representation. *Clemons v. Norton Healthcare Inc. Retirement Plan*, 890 F.3d 254, 278 (6th Cir. 2018). Further, a class action must fit under at least one of the categories identified by Rule 23(b). The Court conducted a preliminary analysis of these issues when it conditionally certified the class under Rule 23(b)(1). Having considered the briefs, exhibits, and arguments presented in favor of final approval, the Court finds:

- *Numerosity*: The members of the proposed class number approximately 10,501 and are therefore so numerous that joinder of all of them is reasonably impracticable;

- *Commonality:* There are questions of fact and law related to management of the retirement plan common to the Class Members, which predominate over any individual questions;

- *Typicality*: The claims of the proposed Class Representatives arise from the same course of conduct that gives rise to the claims of the Class Members, are based on the same legal theories, and are therefore typical of the Class Members' claims;

- *Adequacy of Representation*: The Class Representatives, Jason Dover, Eric Simpson, and Steven Leggett, participated in the retirement plan and have been actively engaged in protecting the Class Members' interests, including by assisting Class Counsel during investigation and mediation of the class claims; and

- *Satisfaction of Rule 23(b)(1):* Prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

The Court therefore unconditionally certifies the class for purposes of settlement.

## VI. Attorney's Fees & Expenses

Class counsel have filed a motion asking the Court to authorize payments of $330,000.00, or 33.33% of the common fund, in attorney's fees and $29,624.91 in litigation expenses. (ECF No. 84.)

In awarding attorney's fees, the Court must ensure that "counsel is fairly compensated for the amount of work done as well as for the results achieved." *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016) (internal citations omitted). The amount of work done and the results achieved may run in tension with one another. *Id.*

One method of calculating attorney's fees, the "lodestar" method, takes account of the amount of work done and involves the Court multiplying the number of hours "reasonably expended" on the litigation by a reasonable hourly rate," then making adjustments for case-specific considerations. *Id.* A second method, the percentage-of-the-fund method, focuses more on the results achieved and requires the Court to determine an appropriate percentage of funds to be awarded to counsel. *Id.* The Court has discretion to select the method of calculating fees in a case. *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009). And under Rule 23(h), the Court may also award reasonable nontaxable costs.

The Court concludes that the percentage-of-the-fund method is appropriate for evaluating the reasonableness of the fees in this case. The Sixth Circuit has articulated six factors to guide consideration in determining whether a proposed fee is reasonable: "(1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of

11

the litigation; and (6) the professional skill and standing of counsel involved on both sides." *Id.* (quoting *Bowling v. Pfizer Inc.*, 102 F.3d 777, 780 (6th Cir. 1996)).

Here, class counsel undertook the representation on a contingent fee basis and advanced considerable labor and expenses in investigating and litigating plaintiffs' claims. Class counsel have submitted documentation showing that they advanced litigation expenses in the amount of $29,624.91 to prosecute the case. (Expenses Incurred, ECF No. 85-3.) The 33.33% fee award they have requested in addition to reimbursement of expenses falls within the rage of percentage fees that have been previously approved in complex class actions. *See, e.g.*, *Simpson v. Citizens Bank*, No. 12-10267, 2014 WL 12738263, at *6 (E.D. Mich. Jan. 31, 2014) ("Class Counsel's request for 33% of the common fund created by their efforts is well within the benchmark range and in line what is often awarded in this Circuit.")

As noted above, ERISA class actions are complex, and the record shows that counsel fought ably to vindicate their clients' interests in the face of rapidly evolving law regarding fiduciary duties under ERISA. Counsel for both parties are highly respected and experienced attorneys in the field of ERISA litigation. Additionally, the Court has reviewed counsel's declarations regarding their lodestar fee calculation as a cross-check for their requested percentage award (ECF No. 85-2). The Court notes that the proposed 33.33% fee award is substantially less that the

12

lodestar incurred during this litigation, thus allowing for a greater award to the class while still fairly compensating counsel for their efforts.

Accordingly, the Court **GRANTS** Plaintiffs' motion with respect for attorneys' fees in the amount of $330,000.00 of the common fund and their request for reimbursement of costs in the amount of $29,624.91.

### VII. Incentive Fees

Plaintiffs have additionally requested "service" fees, or incentive awards, of $10,000 from the common fund to each of the three named plaintiffs in this action, Jason Dover, Eric Simpson, and Steven Leggett. (ECF No. 84.)

Courts have expressed concerns regarding the propriety of incentive awards, noting the existence of a "danger that the parties and counsel will bargain away the interests of unnamed class members … to maximize their own." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 715 (6th Cir. 2013). And the propriety of incentive awards is far from settled; the Sixth Circuit has neither approved of them nor expressly disapproved them. *See Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 311 (6th Cir. 2016). Nonetheless, the Sixth Circuit has recognized that "there may be circumstances where incentive awards are appropriate." *Hadix v. Johnson*, 322 F.3d 895, 897-98 (6th Cir. 2003). To ensure the amounts are "not a bounty," counsel "must provide the district court with specific documentation … of the time actually spent on the case by each recipient of an award." *Shane Grp., Inc.*, 825 F.3d at 311.

13

According to counsel's declaration supporting the proposed awards, Dover, Leggett, and Simpson "assisted Class Counsel in gathering Plan documents, account statements, and other facts and materials" to prosecute the case. (Lechtzin Decl., ECF No. 84, ¶ 16.) Additionally, they "reviewed each of the pleadings and authorized their filings; they regularly requested and received status updates concerning the litigation and settlement negotiations; and they considered various proposed terms of the Settlement and ultimately authorized Class Counsel to accept Defendants' offer of settlement." (*Id.*) During critical periods in the case, including complaint drafting and mediation, they spoke with counsel "via telephone and email multiple times per week." (*Id.*) At the fairness hearing, counsel additionally told the Court that Dover, Leggett, and Simpson worry about their future employment prospects because there is now a public record that they have previously sued their employers.

The Court finds that an incentive award is appropriate in this case to recognize the efforts Dover, Leggett, and Simpson expended in this case on behalf of the class. The notice of settlement mailed to the class members advised class members that the parties were proposing incentive awards of up to $10,000 for each named plaintiff, and none have objected to it. *See McKnight v. Erico Int'l Corp.*, __ F. Supp. __, 2023 WL 2003276, at *15 (N.D. Ohio Feb. 8, 2023) (approving incentive awards where "parties agreed in the settlement to service awards, and no person objected"); *Waters v. Pizza to You, LLC*, No. 3:19-cv-372, 2022 WL

14

3048376, at *9 (S.D. Ohio Aug. 2, 2022) (same). And the Court finds that plaintiffs' concerns regarding their future employment prospects are understandable. *See, e.g.*, *Gresky v. Checker Notions Co. Inc.*, No. 3:31-cv-01203, 2022 WL 3700739, at *7 (N.D. Ohio Aug. 26, 2022) (recognizing, in approving incentive award, that plaintiff "agreed to put her name on the line as a named plaintiff against her then-current employer")

Nonetheless, the Court finds it appropriate to reduce the incentive awards to $7,500 per plaintiff. While counsel has summarized the work conducted by the representative Plaintiffs, they have not provided documentation showing how much time they *actually* expended on the case. *See Underwood v. Carpenters Pension Trust Fund*, No. 13-cv-14464, 2017 WL 655622, at *12 (E.D. Mich. Feb. 17, 2017) (Michelson, J.) (reducing, in ERISA class case, proposed awards of $15,000 and $7,500 to $5,000 and $2,500 given "absence of any documentation of how much time [plaintiffs] spent on the case"); *cf. Nolan v. Detroit Edison Co.*, No. 18-13369, 2022 WL 16743866, at *4 (E.D. Mich. Nov. 7, 2022) (Lawson, J.) (approving, in ERISA class action, $15,000 incentive award to named plaintiff who "submitted an affidavit attesting to the many hours she spent participating in this litigation including exhausting the Plan's administrative procedures, answering written discovery, appearing for a deposition, reviewing all principal Court filings, and attending the hearing on the motion for class certification and preliminary approval of the settlement agreement"). Moreover, unlike some cases where the

15

named plaintiffs have been required to undergo the stress and time commitment of providing in-depth deposition testimony, here the case never proceeded to formal discovery, so plaintiffs were neither required to prepare written discovery responses nor to sit for depositions. *Cf. Karpik v. Huntington Bancshares Inc.*, No. 2:17-cv-1153, 2019 WL 7482134, at *12 (S.D. Ohio Feb. 18, 2021) (approving, in similar ERISA class action, $7,500 to named plaintiffs who appeared for their depositions and spent significant time reviewing case materials and communicating with class counsel). And sum-certain awards of $10,000 appear to be in stark contrast to the claims of the unnamed class members, which have yet to be calculated and may result in no monetary recovery in some instances.

With that modification, the Court finds that incentive rewards of $7,500 to each named plaintiff are appropriate to recognize their efforts on behalf of the class.

## VIII. Conclusion

For the reasons set forth above, the Court unconditionally certifies the settlement class, approves the settlement, allows the reimbursement of expenses from the common settlement fund, approves the incentive awards to the named plaintiffs, and grants the motions for attorney's fees in the amount stated above.

Accordingly, it is **ORDERED** that the Plaintiffs' motion for final approval of the class settlement is **GRANTED**.

It is further **ORDERED** that the settlement agreement and the plan of allocation are **APPROVED**. The Settlement Administrator shall receive, disburse, and account for the settlement proceeds as provided by the formula for distribution of the settlement fund. After final distribution, class counsel shall file with the Court a certification that the settlement fund has been disbursed according to the plan, or that funds remain undistributed, as the case may be.

It is further **ORDERED** that an incentive award in the amount of $7,500 is approved for and may be distributed to the named plaintiffs, Jason Dover, Eric Simpson, and Steven Leggett.

It is further **ORDERED** that class counsel's motion for attorney's fees and litigation expenses is **GRANTED** and payments from the settlement fund are approved as follows: Class counsel shall receive from the common settlement fund $330,000.00 for attorney's fees and $29,624.91 for litigation expense reimbursement.

It is further **ORDERED** that this action will be **DISMISSED WITH PREJUDICE**. The Court will retain limited jurisdiction over the case for the purposes of enforcing the terms of the settlement.

**IT IS SO ORDERED** this 1st day of March, 2023.
BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge